**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESSICA FAFARA, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>ARENAS, PARKS & STADIUM SOLUTIONS, INC., and VINCENT CACCAMO,<br><br>Defendants. | Case No.: 7:18-cv-09294-CS<br><br>**FIRST AMENDED COMPLAINT**<br><br>**First Amended Collective Action and Class Action Complaint** |

Plaintiff Jessica Fafara, individually and on behalf of others similarly situated by and through his attorneys, Ansell Grimm & Aaron, P.C., allege against Defendants Arenas, Parks & Stadium Solutions, Inc. ("Arenas") and Vincent Caccamo ("Caccamo") (collectively, "Defendants"), as follows:

### JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (Fair Labor Standards Act), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1331 (original federal question jurisdiction). Supplemental jurisdiction over the New York State law claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.  Venue is proper in this District because Defendants conduct business in this district, and the acts and/or omissions giving rise to the claims alleged herein took place in this District.

## THE PARTIES

3. Defendant Arenas is a domestic corporation organized and existing under the laws of the State of New York and maintains its principal place of business at 45 Nicole Lane, Wingdale, New York 12594.

4. At all times relevant hereto, Defendant Arenas has been a business or enterprise engaged in interstate commerce employing more than two (2) employees and earning gross annual sales over $500,000.

5. At all relevant times hereto, Defendant Arenas has been and continues to be an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203.

6. Plaintiff, and Defendant's other employees, regularly handled and used tools and equipment that were moved in or produced for interstate commerce.

7. At all relevant times hereto, Plaintiff was engaged in interstate "commerce" within the meaning of the FLSA.

8. Defendant Arenas constitutes an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

9. Defendant Caccamo is the founder and CEO of Defendant Arenas and oversees the management of the business.

10. Defendant Caccamo possesses and executes the authority to hire and fire employees, supervise their work schedules, and set their terms of compensation.

11. Defendant Caccamo approved Plaintiff's hiring and fired her and set Plaintiff's rate of pay.

12. Defendant Caccamo also managed the managing agents that oversaw Plaintiff's work, hired managing agents, approved expense reimbursement for employees, and approved the issuance of paycheck for employees.

13. Defendant Caccamo exercises sufficient operational control over the Defendant Arenas' operations to be considered Plaintiff's employer under the FLSA and New York State Labor Law ("NYLL").

14. At all relevant times hereto, Defendants have employed "employee[s]," including Plaintiff.

15. At all relevant times hereto, Defendants have been Plaintiff's employers within the meaning of the NYLL §§ 2 and 651.

*Plaintiff's Employment for Defendants*

16. Upon information and belief, Defendants are a full-service construction contractor and maintenance business. Defendants all operate out of a central location at 45 Nicole Lane, Wingdale, New York 12594.

17. Defendants hired employees to work in various positions including sales, marketing, and public relations, and employees in other similar positions.

18. Plaintiff worked for Defendants as the Director of Client Services, Sponsorship & Events from January 3, 2018 through her termination on August 4, 2018.

**NATURE OF THE ACTION**

19. Plaintiff brings this action on behalf of (a) herself and other similarly situated employees who have worked for the Defendants on or after the date that is three (3) years before the filing of this Complaint pursuant to the FLSA; and (b) herself and other similarly situated employees on or after the date that is six (6) years before the filing of this Complaint pursuant to

the NYLL and the New York Commissioner of Labor's Wage Orders codified at 12 N.Y.C.R.R. 137 *et seq.*, based upon the following acts and/or omissions:

    i. Defendants' failure to pay overtime compensation required by federal and state law and regulations to Plaintiff when she worked in excess of forty (40) hours per week; and

    ii. Defendants' failure to provide Plaintiff with proper paystubs as required by NYLL § 195;

    iii. Defendants' failure to provide Plaintiff with payment for her final nine (9) weeks of employment as required by NYLL § 191;

    iv. Defendants' failure to pay Plaintiff the minimum wage under the FLSA and NYLL for her last nine (9) weeks of work; and

    v. Defendants' failure to reimburse Plaintiff for expenses incurred by Plaintiff on behalf of and with the authorization of Defendants.

## FACT ALLEGATIONS

20. At all times relevant hereto, Defendants have committed the following acts and/or omissions with knowledge that they have been violating federal and state laws and that Plaintiff has been and continues to be economically injured.

21. Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL and supporting regulations.

### *Plaintiff's Schedule and Pay*

22. Defendants employed Plaintiff as the Director of Client Services, Sponsorship & Events from January 3, 2018 until August 4, 2018.

23. In that role, Plaintiff performed the following duties:

a. Facilitate warm introductions to the proper channels at leagues, teams, casino, amusement park, network and corporate prospects.

b. Define and structure deal points around Exclusive Construction Sponsor opportunities.

c. Liaise with external counterparts to ensure Defendants' category sponsorship entitlement points are delivered upon; production including but not limited to approved signage, branded items, gift bags, executive access and promised introductions.

d. Evaluate and negotiate category sponsorship opportunities around tentpole events (list below) with the intension of creating awareness for Defendants and building meaningful relationships that will translate to new business.

e. Work closely with marketing and design team on branding, creative and custom proposals.

f. Curate monthly networking engagement with the objective of hosting prospects, clients, media and industry guests; determine theme, negotiate venue and vendor fees, creative, secure host, guest list, manage pre, on-site, and post-event expectations. Facilitate press if applicable.

g. Curate "priceless moments" experiences for prospects and top clients, as well as other creative, non-invasive touch points. Ex. Throwing out first pitch, dinner with a celebrity, travel experience.

h. Obtain premium brand partners and utilize existing partners for product and/or services to off-set client entertainment costs.

      i. Oversee event & entertainment budgets while spending within specified parameters.

      j. Book speaking engagements and press opportunities for Defendants' executives by leveraging media relationships.

      k. Assist in following-up on key leads, organize senior team communication ensuring the group is maximizing business development efforts.

24. In order to fulfill her duties, Plaintiff, and other similarly employees, were required to communicate directly with event sponsors, talent, and vendors, and travel to the site of each event to execute the event.

25. In this capacity, Plaintiff ordinarily worked five (5) days a week.

26. From Monday through Friday, with occasional weekends, Plaintiff began work at 8:00 a.m. and then worked until 6:00 p.m. or as late as 11:00 p.m. depending on meetings with event related vendors/sponsors and the time of each event.

27. Aside from this work, Plaintiff regularly responded to emails from Defendants and event sponsors/vendors outside of her standard work hours, including nights and weekends.

28. For this work, Defendants paid Plaintiff a gross weekly salary of $2,692.31.

29. Defendants failed to pay Plaintiff any additional pay for her extensive overtime hours.

*Defendants' Violations of NYLL § 195*

30. Defendants failed to provide Plaintiff with a wage notice or proper paystubs as required by NYLL § 195.

31. Defendants failed to provide Plaintiff with proper wage statements stating, among other things, the number of overtime hours she worked or her hourly rate for overtime hours.

### *Defendants' Failure to Pay Plaintiff Her Required Wages*

32.     Pursuant to Plaintiff's employment agreement with Defendants, Plaintiff was to be paid her salary on a weekly basis.

33.     Moreover, absent an agreement, pursuant to NYLL § 191(d), Plaintiff is required to be paid "not less frequently than semi-monthly, on regular pay days designated in advance by the employer."

34.     On June 1, 2018, Plaintiff received her last regular weekly paycheck in the amount of $1,719.00."

35.     Defendants failed to pay Plaintiff on her regularly scheduled paydays on June 8, 2018, June 15, 2018, and June 22, 2018.

36.     On June 25, 2018, Plaintiff received a lump sum wire in the amount of $5,142.27 totaling her net wages for the prior three (3) weeks of missed payroll.

37.     However, the payment on June 25, 2018 was not a payroll check nor did Defendants pay the applicable tax withholdings.

38.     Defendants then failed to pay Plaintiff on her regularly scheduled paydays on June 29, 2018, July 6, 2018, and July 13, 2018.

39.     During the course of these missed payroll dates, Plaintiff was engaged in producing a large-scale client entertainment event in Washington, D.C., so Plaintiff continued to fulfill her job duties despite lack of payment.

40.     On July 17, 2018, Plaintiff asked Defendant Caccamo if she should be looking for a new job, to which he texted, "No. Why?"

41. On July 20, 2018, a deposit appeared in Plaintiff's checking account in the amount of $1,719.00.

42. However, the payment on July 20, 2018 was not a payroll check nor did Defendants pay the applicable tax withholdings.

43. Plaintiff continued to work despite the outstanding wages due to her, and Defendants again failed to pay Plaintiff on her scheduled paydays of July 27, 2018 and August 3, 2018.

44. Plaintiff attempted to contact Defendants on multiple occasions to no avail.

45. On August 4, 2018, Defendants sent a text message to Plaintiff and others stating, "I'm digging myself out of a hole, if you need to jump ship, I understand…"

46. On August 6, 2018, Plaintiff's work email was deactivated by Defendants and she has not performed any work for Defendants or received any communication from Defendants since that date.

47. Defendants have not communicated any further with Plaintiff or made any wage payments for the missed paydays.

48. Moreover, in or around April and May 2018, Plaintiff was directed by Defendants to put her team's expenses for various work trips on her personal credit card and was promised that she would be reimbursed for these expenses.

49. Plaintiff incurred the following expenses:

   a. $984.06 on April 2, 2018 for miscellaneous business expenses;

   b. $4,294.31 on April 18, 2018 for travel to Las Vegas;

   c. $1,625.25 on May 10, 2018 for travel to Las Vegas; and

   d. $742.21 on May 22, 2018 for travel to Washington, D.C.

50. To date, Plaintiff has not been reimbursed for these expenses.

51. Additionally, Plaintiff was not paid one and a half times her regular hourly rate for all hours worked over forty (40) in a given week.

52. Plaintiff worked at least fifty (50) hours per week.

53. Plaintiff also regularly worked more than fifty (50) hours per week.

54. Defendant failed to pay Plaintiff any additional pay for her extensive overtime hours.

55. On or about July 16, 2018, Plaintiff was responsible for executing an event in Washington, D.C. on behalf of Defendants.

56. Defendants were responsible for the payment of individuals and vendors at the time of the event, to be reimbursed by payments from sponsors after the event.

57. Moreover, Plaintiff's co-workers were scheduled to attend the event to help prepare and execute the event on behalf of Defendants.

58. However, in the weeks leading up to the event, Defendants were unresponsive to Plaintiff's repeated communications seeking details on how Defendants were going to pay vendors at the time of the event and how to coordinate sponsor reimbursement to Defendants.

59. Moreover, at the time of the event, Plaintiff's co-workers failed to attend to assist in its preparation and execution.

60. In order to ensure that Defendants did not breach their contracts with their clients, sponsors, and vendors, Plaintiff, individually and with the help of her friends advanced payment to individuals and vendors to execute the event in the amount of $24,148.18 as follows:

    a. Venue Fee - $4,625 (paid through Plaintiff's credit card)
    b. Venue Fee - $4,625 (paid by Plaintiff's friend)
    c. Hotel - $1,722
    d. Hotel incidentals - $129.98

    e.   Security - $800
    f.   Door Support (3) - $150 each = $450 (paid through Plaintiff's Venmo)
    g.   Bartender Gratuity (3) - $200 each = $600
    h.   Invitation Design - $200.00 (paid through Plaintiff's Venmo)
    i.   Signage – approximately $500
    j.   Design Edits - $50 (paid though Plaintiff's Paypal)
    k.   RSVP Management - $400 (paid by Plaintiff's cash)
    l.   Photographer - $500 (paid by Plaintiff's cash)
    m.   Step & Repeat - $369.20 (paid by Plaintiff's friend)
    n.   Modell's - $1,000
    o.   Alexis (Producer) – $1,000 (paid by Plaintiff's cash)
    p.   Alexis (Transportation) - $250 (paid by Plaintiff's friend)
    q.   Pre-Event Venue Walk-Thru (transportation & hotel) – approximately $750
    r.   Various incidental expenses, including pre-event planning meetings, staff meals, and transportation - $6,088 (paid through Plaintiff's cash and credit cards)

61. Plaintiff was responsible for reimbursing her friends in the amount of $4,875 for payments made on behalf of Defendants.

62. Plaintiff secured sponsorships for the event in the amount of $30,500 as follows:

    a.   Oakley - $15,000 (paid on October 1, 2018)
    b.   Deep Eddy Vodka - $10,000 (paid on August 13, 2018)
    c.   Anheuser Busch - $5,000 (paid on July 25, 2018)
    d.   Super Coffee - $500

63. However, these sponsors received sales commission payouts based on the total sponsorship fees raised in the amount of $6,350 as follows:

    a.   Oakley - $3,000
    b.   Deep Eddy Vodka - $2,000
    c.   Anheuser Busch - $1,200
    d.   Super Coffee - $150

64. Plaintiff advised Defendants that she was going to take receipt of the sponsors' payments to reimburse herself and others for the expenses advanced on behalf of Defendants.

65. Plaintiff reactivated her limited liability company, SocialWave, LLC, to accept payment from the sponsors.

66. Plaintiff then utilized the sponsors' payments to reimburse herself and her friends for the expenses they advanced on behalf of Defendants.

67. However, as a result of Plaintiff's receipt of "income" from the sponsors, she has incurred additional tax liability of approximately $8,000 as a result of Defendants' failure to directly reimburse her expenses.

## COLLECTIVE ACTION ALLEGATIONS

68. Defendants' failure to comply with the FLSA extended beyond the Plaintiff to all other similarly situated employees insofar as Defendants had a policy to not pay their employees for the hours they worked in excess of 40.

69. Defendants' failure to comply with the FLSA extended beyond the Plaintiff to all other similarly situated employees insofar as Defendants failed to pay all other similarly situated employees their weekly wages on the regularly scheduled paydays of June 8, 2018, June 15, 2018, June 22, 2018, June 29, 2018, July 6, 2018, July 13, 2018, July 20, 2018, July 27, 2018, and August 3, 2018.

70. Plaintiff seeks certification of this action pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of herself, individually, and all other similarly situated current and former individuals performing similar duties for Defendants.

71. The consent to sue form for the Plaintiff is attached hereto as **Exhibit 1**.

72. Upon information and belief, there are at least five (5) current and former employees of Defendants who have been denied proper overtime and regular wage compensation while working for Defendants.

73. At all relevant times, Plaintiff and others who are and/or have been similarly situated, were paid by Defendants in similar ways, and have been subject to Defendants' common

practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the statutorily required wage payments and overtime compensation for hours worked in excess of forty (40) per workweek. The claims of Plaintiff stated herein are similar to those of the other employees.

## CLASS ACTION ALLEGATIONS UNDER FED.R.CIV.P. 23(b)(3) FOR VIOLATIONS OF THE NYLL

74. Plaintiff bring this action on behalf of herself and all other persons who were or are employed by the Defendants performing similar tasks and duties as Plaintiff but who did not receive proper wage payments, overtime pay, or p wage notices and/or wage statements in respect to their work for the Defendants.

75. Upon information and belief, this class of persons consists of not less than five (5) employees, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed.R.Civ.P. 23(a)(1).

76. There are questions of law and fact common to the class, which predominate over any questions affecting only individual members, specifically: whether the employment of Plaintiff by the Defendants is subject to the jurisdiction and the wage and overtime requirements of the NYLL.

77. The claims of Plaintiff are typical of the claims of the above-described class in that all the members of the class have been similarly affected by the acts and practices of the Defendants.

78. Plaintiff will fairly and adequately protect the interests of the members of the class, in that his interests are not adverse to the interests of the other members of the class.

79. A class action is superior to the other available methods for the fair and efficient adjudication of the controversy under the standards of Fed.R.Civ.P. 23(b)(3).

80. Plaintiff brings the second, third, fourth, and eighth claims for relief herein on behalf of herself and all other persons similarly situated as a class action pursuant to Fed.R.Civ.P. 23, in respect to all claims that Plaintiff and all persons similarly situated have against the Defendants as a result of the Defendants' violations under the NYLL.

### FIRST CLAIM FOR RELIEF
### (FLSA Overtime Wage Violations Against Defendants)

81. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

82. Throughout the statute of limitations period covered by these claims, Plaintiff and others similarly situated regularly worked in excess of forty (40) hours per workweek.

83. At all relevant times hereto, Defendants have had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of knowingly and willfully failing and refusing to pay Plaintiff and others similarly situated at one and a half times their regular rate of pay for all hours of work in excess of forty (40) hours per workweek, and willfully failing to keep required records, in violation of the FLSA.

84. Plaintiff and others similar situated seek damages in the amount of their respective unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### SECOND CLAIM FOR RELIEF
### (NYLL Overtime Wage Violations Against Defendants)

85. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

86. New York law prohibits an employer from permitting an employee to work without paying overtime wages for all hours worked in excess of forty (40) in any workweek.

87. Throughout the statute of limitations period covered by these claims, Defendants knowingly, willfully, regularly and repeatedly have failed to pay Plaintiff and others similarly

situated at the required overtime rates, one and a half times their regular rate of pay, for hours worked in excess of forty (40) per workweek.

88. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff and others similarly situated have sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
**(NYLL Failure to Notify Against Defendants)**

89. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

90. Pursuant to §195(1) of the NYLL, within ten business days of Plaintiff and other similarly situated employee's hiring, Defendants were required to provide them with a notice describing, *inter alia*, their hourly regular and overtime rates of pay.

91. Pursuant to §195(3) of the NYLL, Defendants were required to provide to Plaintiff and others similarly situated a wage statement containing, *inter alia*, a record of each hour worked and the employee's rate of pay.

92. Defendants failed to provide Plaintiff and others similarly situated with a notice of proper wage statements in accordance with §195 of the NYLL.

93. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff and others similarly situated have sustained damages and seek damages in accordance with §198 of the NYLL for each week Defendants failed to provide such wage statement, along with attorneys' fees, costs and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**(NYLL Failure to Timely Pay Wages Against Defendants)**

94. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

95. Pursuant to §191 of the NYLL, Defendants were obligated to provide Plaintiff with her wages for his last two weeks of employment.

96. Defendants failed to provide Plaintiff and other similarly situated employees with full payment in accordance with §191 of the NYLL.

97. As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damages and seeks damages in accordance with §198 of the NYLL because Defendants failed to provide such payment, along with attorneys' fees, costs and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**(Quantum Meruit Against Defendants)**

98. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

99. At all relevant times hereto, Plaintiff performed work and services for Defendants.

100. Plaintiff had a reasonable expectation of payment for the hours she worked for Defendants, but Defendants failed to remunerate Plaintiff for all the hours he worked.

101. Plaintiff had a reasonable expectation of payment for the expenses she incurred on behalf of and with the authorization of Defendants, but Defendants failed to remunerate Plaintiff for all the expenses.

102. Plaintiff is entitled to payment for the unpaid work she performed for Defendants at a rate that is considered the reasonable value of her services, repayment of the expenses incurred by Plaintiff on behalf of and with the authorization of Defendants, together with an award of interest, costs, disbursements, and such other legal and equitable relief as this Court deems just and proper.

### SIXTH CLAIM FOR RELIEF
**(Unjust Enrichment Against Defendants)**

103. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

104. At all relevant times hereto, Plaintiff performed work and services for Defendants.

105. At all relevant times hereto, Plaintiff incurred expenses on behalf of and with the authorization of Defendants.

106. Plaintiff had a reasonable expectation of payment for the work she performed for Defendants and repayment of the expenses she incurred on behalf of and with the authorization of Defendants, but Defendants failed to remunerate Plaintiff for all the hours she worked and expenses incurred.

107. Defendants were enriched at the expense of Plaintiff.

108. The foregoing circumstances are such that equity and good conscience require Defendants to make restitution, in the form of payment for the work performed by Plaintiff for Defendants at a rate that is considered the reasonable value of his services, together with an award of interest, costs, disbursements, and such other legal and equitable relief as this Court deems just and proper.

## SEVENTH CLAIM FOR RELIEF
### (Minimum Wage Violations under the FLSA Against Defendants)

109. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

110. Defendants have knowingly and willfully engaged in a policy, pattern or practice of violating the FLSA, as detailed in this Complaint.

111. Defendants failed to pay Plaintiff, and other similarly situated employees, for each hour worked at the minimum wage during the weeks ending June 8, 2018, June 15, 2018, June 22, 2018, June 29, 2018, July 6, 2018, July 13, 2018, July 20, 2018, July 27, 2018, and August 3, 2018, in violation of 29 U.S.C. §§ 206(a) and 255(a).

112. Plaintiff seeks damages in the amount of her unpaid compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF
### (Minimum Wage Violations under the NYLL Against Defendants)

113. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

114. Defendants failed to pay Plaintiff for each hour worked at the minimum wage during the weeks ending June 8, 2018, June 15, 2018, June 22, 2018, June 29, 2018, July 6, 2018, July 13, 2018, July 20, 2018, July 27, 2018, and August 3, 2018, in violation of NYLL § 652 and the supporting regulations of the New York State Department of Labor.

115. As a direct and proximate result of Defendants' willful and unlawful conduct, as set forth herein, Plaintiff has sustained damages and seeks recovery for unpaid wages in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

## NINTH CLAIM FOR RELIEF
### (Breach of Contract)

116. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

117. Plaintiff and Defendant entered into an Employment Agreement whereby Plaintiff was employed by Defendants pursuant to the terms therein.

118. Pursuant to the Agreement, Defendants were obligated to pay Plaintiff a weekly gross salary of $2,692.31 payable every week subject to applicable deductions and remittances.

119. Pursuant to the Agreement, Defendants were obligated to reimburse Plaintiff for all approved expenses within one (1) week of Plaintiff's submission of supporting documentation for such expenses.

120. Defendants have breached and defaulted under the Agreement by failing, *inter alia*, to pay Plaintiff her weekly wages for the weeks including June 8, 2018, June 15, 2018, June 22, 2018, June 29, 2018, July 6, 2018, July 13, 2018, July 20, 2018, July 27, 2018, and August 3, 2018.

121. Defendants have breached and defaulted under the Agreement by failing, *inter alia*, to reimburse Plaintiff for her approved expenses.

122. Plaintiff has substantially performed all of her duties and obligations under the Agreement and, as such, has and continues to suffer losses and damages as a direct result of Defendants' breach.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment awarding:

A. Compensatory Damages in an amount to be determined at trial;

B. Prejudgment Interest;

C. Liquidated Damages pursuant to the FLSA and NYLL;

D. Punitive Damages;

    E. Plaintiff's costs and reasonable attorneys' fees; and

    F. Any relief the Court deems just and proper.

Dated: Woodland Park, New Jersey          ANSELL GRIMM & AARON, P.C.
       March 25, 2019

                                                *s/Michael H. Ansell*_____
                                                Michael H. Ansell, Esq.
                                                365 Rifle Camp Road
                                                Woodland Park, New Jersey 07424
                                                Telephone: (973) 247-9000
                                                Facsimile: (973) 247-9199
                                                Email: mha@ansellgrimm.com

                                                *Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues triable before a jury.

Dated: Woodland Park, New Jersey          ANSELL GRIMM & AARON, P.C.
       March 25, 2019

                                                *s/Michael H. Ansell*_____
                                                Michael H. Ansell, Esq.